Good morning, and may it please the Court. I'm Elizabeth Newman, representing the appellant Mr. Murguia. Your Honors, the government had the burden here of showing that Mr. Murguia was a fugitive. But all it ever showed was that Mr. Murguia had not reported to his probation officer. And this Court has already ruled that that doesn't make you a fugitive. And it doesn't make you a fugitive because being a fugitive means something more. It means that you've taken an act to affirmatively conceal yourself, and you've done so with the intent of evading law enforcement process. The government... Did he have a legal obligation to do something he didn't do? I'm sorry, Your Honor? Did he have a legal obligation to do something that he didn't do? He had an obligation to report to his probation officer, yes, Your Honor. That was one of the conditions of his supervised release. And he didn't do it? He didn't do that, Your Honor. That doesn't make him a fugitive according to what case? According to U.S. v. Gonzalez, Your Honor, which this Court decided in 2002. In the Gonzalez case, the defendant was under supervised release, and he didn't report to his probation officer. The probation officer went to the apartment where he was – where he believed Mr. Gonzalez to be. He showed Mr. Gonzalez's photo to the apartment manager and said, do you recognize this person? The apartment manager said, oh, yes, I see him here every day. They went to – the probation officer went to that apartment and found there Mr. Gonzalez's girlfriend's daughter. The record doesn't reflect her age, and said to the daughter, tell Mr. Gonzalez he has to report or a bench warrant's going to issue for his failure to report, and we're going to violate him. Mr. Gonzalez doesn't report, and nothing happens for a further seven months. Seven months later, he's arrested, still living in the same city, but at a different address. And this Court said he's not a fugitive. Not reporting is not enough to make you a fugitive in the absence of some showing by the government that he did something more, that he took an affirmative step to conceal himself with the intent of evading law enforcement process. I would submit, Your Honor, that what the probation officer did in Gonzalez was more thorough and more of an attempt to really find him than anything that the probation office did, in this case, with Mr. Morgilla. Here, they sent him a letter, and he didn't respond. They sent it to the address where they believed him to be living, and they never followed up. But that's not enough. There was never any showing that Mr. Morgilla was not accessible, not readily accessible to a careful law enforcement officer, and that's what has to be shown. That's the test that was enunciated in Wozni. Mere absence, said the court in Wozni, isn't enough. Moving isn't enough, as long as you're accessible to a careful law enforcement officer. Even moving, even a move that makes your arrest more difficult isn't enough, said the court in Kaplan. And these are, you know, very well-established precedents. It's true that Mr. Morgilla admitted at his violation hearing, once the court said it had jurisdiction and that the time had been told, that the probation office hadn't known where to find him. And the government makes a lot of that in its brief. But initially, aside from the fact that Mr. Morgilla can't really speak to the level of the probation office's knowledge, I would say more broadly that even if it's true that they didn't know where to find him, that's not an admission that he was trying to hide. And that admission, I mean, trying to hide, is what the government had to show, to show he was a fugitive, and they never did. Because even if they don't know where to find him, he's not a fugitive unless he's not readily accessible to that careful law enforcement officer under the Wozni case. And the government never showed that. They showed he didn't respond to a letter they sent him. And as to that, if he wasn't at that address, that would hardly be surprising, given the home situation that's revealed by the record as to the events of October 2003. But also, there's no showing that he did move, only that he didn't report. No one went to the apartment. No one checked utility records. No one did anything to try to find him. They simply let the matter go until he was arrested, ultimately, about 11 months later. Well, does that mean that you don't have to do what you're supposed to do? Certainly not, Your Honor. He had an obligation to report, and he didn't do it. But the government has to do what it's supposed to do, too, under 3583i. If they're going to bring someone in for a revocation after the supervised release term has run, and they're doing it with a warrant, which is how they did it here, then they have to swear the warrant. And they didn't do that. And that acts as a kind of a jurisdictional limit on whether Judge Real had the authority to conduct a revocation hearing at all. I'm not saying that Mr. Murgia's conduct was stellar. He didn't report, and he should have. But the government had an obligation to, if they were going to revoke him, to do it in the way that the law provides. So when they finally catch up to him, he has basically succeeded in erasing his responsibilities by not reporting. Is that right? That would be right, Your Honor, if he had made efforts to hide himself before they could catch up to him. If they had made efforts or not, he succeeded in erasing his responsibilities by not showing up. No, Your Honor. It's different than the fugitive doctrine that's being talked about in Gonzales, which is simply an equitable doctrine. This is quite different. Your Honor. In terms of its ramifications, when you look at what it means by allowing somebody just not to show up, and then if he can stay out there long enough, and a busy government has other things to do, I mean, they're trying to stop al Qaeda at the border and get rid of people married to lawful permanent residents. It just erases the whole thing and walks. It doesn't sound like a very judicious result, does it? Well, Your Honor, the government does have a burden of diligence here. I agree that catching al Qaeda at the border is probably a higher law enforcement priority than revoking Mr. Bergia's supervised release. But the government does have a burden of diligence, and if the Court thinks that a fugitive disentitlement analogy is not a correct one, then there are all of the cases that interpret the statute 3920 about what it means to be a fugitive and when the statute of limitations can be told because you've been a fugitive. Or the government's – well, actually, the government's cases don't really pan out that way, so I withdraw that last comment. But the cases interpreting 3920, I think, are very instructive because they lay out very clearly the government's burden of diligence. For example, the Kaplan case. That was an extradition issue. England wanted him. He was arrested here. And the issue was whether the statute of limitations barred his extraditability. I'm wondering what he would have thought he was when he just knowingly failed to report. I'm sorry, Your Honor? What Mr. Bergia might have been thinking? What he would have thought he was. Oh, I haven't gotten the government didn't do its proper due diligence, therefore I'm not a fugitive and I haven't absconded. Well, Your Honor, I think that fugitive has to be used in a – that word has to be used in a way that's consistent with a case law rather than a way that's consistent with colloquial speech. Not reporting doesn't mean that you're a fugitive unless you're actually trying to hide. And the government had a burden of showing that he was doing something from which a person could infer that he was trying to hide. These are the people that the black and white police officers will tell you of which they are most afraid. Because when they stop them on the streets, they stop them in a car, they have no idea that this person is really wanted. And these are the kinds of people who then pull guns and do crazy things. Black and white people think they're fugitives. Black and white people perhaps don't have the benefits of this Court's case law in the sense that Mr. Murgia is not someone who would – who anyone has shown has pulled a gun on a police officer ever. The category of people like this on the lam poses a special danger to law enforcement on our streets. I certainly understand that, Your Honor, but the government did have a burden of diligence here which it didn't execute. Unless the Court has further questions, I'd like to reserve the rest of my time. Thank you. May I please record? I'm Michael Rafel on behalf of the United States. Your Honors, in this case, the defendant never reported to the probation office for at least a year during the time that he was in the United States. And a warrant was pending, although technically not sworn facts under Vargas-Maya, a warrant was pending for 10 months of that time. Between January and November of 2004. We're asking this Court to hold following the Crane case at a minimum that when a warrant is pending for a defendant and the defendant is not – there's evidence the defendant is absconding, choosing not to show up. What effort was made to find him after the warrant was issued? Before the warrant was issued, Your Honor, the defendant – After the warrant was issued. After the warrant. There is no record on that, Your Honor. There are – at the time of Vargas-Maya, there were 800 warrants in our district, Central District of California, for probation violators. There were 1,200 warrants in the Southern District of California. These facts are, of course, outside the record. But my point is that there are lots of warrants out there for probation violators, and we do not have a specific record on each one. Prior to the warrant being issued, a certified letter was sent in early December 2003 to the defendant's address, the address – the San Diego address for him when he was arrested on an offense in October 2003. A certified letter was sent to him saying, show up on December 17th, and he did not show up. And that's what led to the warrant being issued. And so we're arguing that the defendant was not, in fact, on supervised release. He was not subject to the terms and conditions of supervised release. During the time that the warrant was pending, at a minimum, the 10 months there, and following the Crane case, which holds that there can be tolling of supervised release during such a time period, our position is that the Court had room to find tolling here. The tolling begins where? When exactly? At a minimum, Your Honor, it should begin when the warrant was filed. We have an alternative argument that it should begin even before that, because he was not subject to the terms and conditions of a supervised release, you know, from the moment he did not – did not report. But you don't need to argue that. We don't need to argue that. And there's – you know, the best statement of this actually comes from an opinion we cite called Thompson of Judge Cabranes' in Connecticut, where he says that at the time of the warrant, that's when the probation office declared, we're not supervising him, we are looking for him. And so the substance of what's going on here is the person is supposed to serve a term of supervised release. During that 10 months, he is not, in fact, serving a term of supervised release. Well, anybody go back to that place where he was apparently living another time? Someone went there, and there's a young – there's another person who was told to call – to call the probation office. There is not a record. Another visit there? There is not a record on that. So I have no proof that anything like that was done, Your Honor. I have to concede that. The efforts were made before the warrant. The warrant was pending. And this whole time, the defendant had a duty. Would the efforts consist of the one visit to this residence? The certified letter that was sent to his residence and the fact that a warrant, you know, was issued for him and was in the database. There is not a record. Did he sign a receipt for that certified letter? There is – we do not have a record that he did that. The evidence that we have is only that the letter was – But even he hadn't reported, I think. Yeah, and, you know, I should mention, Your Honor, that the defendant admitted in his – in this violation here, in the underlying violation, he admitted failing to report on December 17th as that letter required him. He did not, you know, raise the factual argument that I never got the letter. He also admitted failing to report within 72 hours of returning to the country by the probation officer. I would mention there's another condition of his probation that was right there on page 36 of the excerpt of the record that he has to file a monthly report with the probation officer. He knows in general he is on supervised release. He's supposed to serve supervised release. The case relied on primarily by your opponent is the Gonzales case. And there's some language in there, of course, that might give you heartburn. But the language does say the doctrine doesn't apply to an appellant just because he's not reported. In the absence of a showing that he has fled or hidden himself from the jurisdiction of the court, why isn't failing to report hiding yourself from the jurisdiction of the court? I think it is, Your Honor. The defendant is wringing a lot out of the analysis in that case, which is three sentences and one paragraph, in the Fugitive Entitlement Doctrine. I think a lot of what explains the difference, you know, if you really push it between that case and a case like Crane, is that when this Court is applying the Fugitive Entitlement – Disentitlement Doctrine, this Court – it's a very harsh remedy that's out there. This Court is looking at dismissing a defendant's appeal. And in Gonzales, the defendant was not a fugitive at the time of the decision, at the time of the appeal. And so the Court concluded, and I think the essence of the holding in that case, is that this Court was not going to apply the Fugitive Entitlement Doctrine in that circumstance. And along the way, the Court does indicate that his prior – his prior failure to report, I think this Court's language is, does not establish that he's a fugitive. But – Where was this letter sent? This letter was sent to an address in San Diego that was the defendant's address that was associated with an arrest in October 2003 in San Diego. And this is the violation the defendant admitted, that he violated his release in December by not showing up as that letter ordered him to do. I'd further mention, you know, the Crane case is the primary case we rely on in our brief. There's another case that we cite in passing that I wouldn't want this Court to miss, which is the Neville case, which takes Crane actually a step further and holds that even where there's not intent to flee, there still can be tolling. In the Neville case, the defendant had been served with a warrant a few days before his supervised release ended. He showed up fairly promptly a few days after his supervised release ended, and this Court held that the purposes of the statute warranted tolling even during that period where the defendant had not been trying to flee. But what I think at a minimum Neville stands for is that there's a broad effort to read the statute to show that when someone is not in fact subject to the terms of supervised release, this Court will try to effectuate the purposes of supervised release by allowing the revocation to go forward. Here the defendant never showed up for his supervised release with his probation office. He was not in fact subject to the terms and conditions of his supervised release. This was due to his own wrong, his own failure to show up. And we think that's enough under the case law, particularly Crane allows it, and the Court was within its discretion. Kennedy. Which is the Cabranes case you would like us to take another look at? The United States v. That's different than the Neville case, which I was referring to. The Neville case is from this Court. The Cabranes case, district court case. When he was a district court judge. And I cite it simply because, I mean, I think while that's not binding, I think it's particularly good discussion of this where Judge Cabranes says that. And which case is that? Thompson. Thompson. 841 Fedsup. Okay. Yes. And it just, it explains perhaps the reasons behind a case like Crane a little bit more in that it may be that the defendant was not in fact on the terms of, on, in effect, effectively on supervised release from the moment that he failed to show up coming back in the country. But a good reason to use the date of the warrant as the date where the toll rate starts is that is a clear time when the probation office has showed we are not supervising him anymore. We are looking for him. Now, let me understand this. The Gonzales was a question of whether or not you should dismiss an appeal as being because he's a fugitive because he didn't report to the probation office. Yes. And this Court's applying it. This is a different context. Yes. And I think it's very different because sort of the object of that is this Court taking a very harsh remedy in dismissing an appeal for a defendant who's not a fugitive at the time. The object that's at issue in Crane in a case like this is the defendant avoiding supervised release, not penalizing him on appeal, but saying that, you know, there's a reason for supervised release, to protect the public and to assimilate the defendant into society, and he's absconded by his own choice and he's not effectively serving it. So that goal is completely different than the Fugitive Entitlement Doctrine in much higher standards. So that was a direct appeal from a criminal conviction? Is that what we're talking about? Yes, I believe it was. And what had happened in the past in that case, not at the time of the appeal, but the defendant had failed to report, and that was one of the facts this Court was evaluating in deciding the Court uses words like the purposes of the Fugitive Entitlement Doctrine do not warrant its application. Thank you. Thank you very much, Your Honors. Your Honors, there are two points that I'd like to address. One is the issue of whether Mr. Bergia was absconding, as the government has repeatedly said, both in its brief and here at argument today. Absconding has a relatively precise meaning. Certainly, Blacks gives it that meaning. Relatively precise. I love it. Thank you, Your Honor. But Blacks gives it that, a meaning that's extremely, that's precisely consistent with the meaning of being a fugitive in this Court's case law. And this Court's case law, when it talks about defendants who have absconded, they have done things that make them fugitive under that same definition. They've taken affirmative acts to evade law enforcement process, not simply staying more or less where they are and simply not reporting to their probation officers. The other issue that I'd like to address is this issue of Gonzales and the Fugitive Disentitlement Doctrine. And I'd like to point out that the policy considerations are precisely the same here. Counsel, isn't the ---- I'm sorry. I just don't, I do not see the similarity between saying that someone who didn't report to probation does not lose the right to appeal directly from a criminal conviction, which is something that is, if it's not due process, it ought to be. I think it is. And someone who is told that he's supposed to report in order to be able to stay out on the street and doesn't do it. Well, Your Honor, it's really a question of do you reward this conduct or is it a windfall if you let that person go forward? And I would say that under that perhaps broad definition, if the, you know, the Court may think it's rather broad, but it's the same policy prioritization law. Well, I guess I'm looking at it in terms of what are you losing, and they're very different things. Oh, okay. Thank you, Your Honor. The case just argued is submitted for decision. We'll hear the last case, which is Tolbert v. Lamar. Thank you.
judges: Schroeder, Pregerson, Trott